DECISION
This matter came before the Court on March 12, 1996, for a hearing on defendant's Motion to Suppress evidence seized by the North Providence police department ("NPPD") from the locker used by defendant, Anthony Rubino ("Rubino"), at the NPPD station sometime during October 7, 1994, and that this indictment should be dismissed for the failure of the NPPD to provide warnings, as required in Miranda v. Arizona, 384 U.S. 436 (1966), to defendant upon the occasion of his meeting with the Acting Chief of Police, Lieutenant James P. Mullen ("Mullen").
Defendant asserts that his rights under the Fourth and Fifth amendments to the United States Constitution and under Article 1, sections 10 and 13 of the Rhode Island Constitution were violated by the NPPD.
Fourth Amendment
Rubino was a sixteen-year veteran of the NPPD on October 7, 1994. On that day, Rubino was suspended by Mullen, pending an investigation under the Law Enforcement Officers' Bill of Rights ("Bill of Rights"). At the time of the suspension (during the afternoon of October 7) Rubino met with Mullen who, and this is undisputed, advised him not to make any statements. After the suspension, Rubino, who was then a Captain in the NPPD, was escorted to his locker by Lieutenant Conrad Zohn ("Zohn"). Rubino testified that Mullen precluded him from removing anything from the locker except for a pair of shoes. Zohn testified that he knew of no prohibition against Rubino removing any other personal effects from the locker and, in fact, believed that he removed his shoes and some other "personal items, including a photograph of his wife." Subsequent to the trip to the locker, Rubino surrendered his keys, including his locker key, to Zohn. Later that day a search was made of Rubino's desk and the locker in which a letter and poem were found relating to sexual abuse. No search warrant was requested or issued, and none of the items seized were "in plain view." Photocopies of one hundred dollar bills totaling $2,000 were also seized. The police lockers were all owned by the NPPD but used by police officers, who provided their own locks and keys, to store personal and official police items.
One of the issues raised in this case is whether or not Rubino had an expectation of privacy after his suspension pending an investigation for violations not related to this indictment.
Assuming an expectation of privacy for the locker, Rubino, at least impliedly, gave consent to enter that locker when he surrendered the locker key to Zohn. Despite a directive to do so, Rubino had the choice of exercising any perceived right of privacy.
In addition, Zohn testified that Rubino was not precluded from removing any personal items from the locker, a fact attested to by Mullen. This Court believes this testimony to be credible.
In addition, this Court is not convinced that Rubino, or any police officer in the NPPD, was entitled to an unfettered or unlimited expectation of privacy. The Court takes note that officers of the NPPD are members of a quasi-military organization requiring a higher degree of discipline, chain of command, and subject to inspection as if they were in the military, eg. inspection of foot lockers of military personnel.
This Court, therefore, does not believe defendant Rubino's Fourth Amendment rights against an illegal search were violated in the search of the locker used by him at the NPPD station.
Fifth Amendment
Rubino raises the issue that the indictment should be dismissed because the NPPD failed to "Mirandize" him when he was called back to the NPPD station during the evening of October 7, 1994, to answer questions put to him by Mullen relating to documents found in the locker used by Rubino.
Mullen testified that Rubino was not in custody or a suspect and thought that Rubino may have been the "target of blackmail." Rubino himself testified that he was allowed to leave after this conference, that he was not in custody, nor was he under arrest.
Rubino testified that he was asked several questions, including: "Did you have sexual intercourse"? "Did you have oral intercourse"? "What was the girl's name"? He indicated that he answered these questions but the Court did not benefit from these answers except as to the name and address of the alleged victim of sexual assault.
The United States Supreme Court in Miranda, supra, using the Fifth Amendment standard against compulsion as a rationale, declared that, prior to questioning, the police must warn asuspect in custody that he has the right to remain silent, any statement he makes might be used against him, and he has the right to presence of counsel, retained or appointed. Such is not the case here. Rubino was not in custody.
In any event, and assuming that the NPPD suspected Rubino of having committed a sexual assault, it appears to me that any questions or responses by Captain Rubino at the time of his meeting with the Mullen were not incriminating, thus making this issue moot. If his answers were incriminating, this Court would consider excluding them during trial.
Therefore, defendant's Motion to Suppress is denied.
Counsel for the State of Rhode Island shall prepare appropriate order for entry.